# Wheeling.

Lewis, Receiver, &c., *v.* Rosler, Sheriff, *et al.*

Decided March 27, 1880.

1. The words "*fixtures* and *appurtenances*" have acquired a peculiar and appropriate meaning, and are to be construed according to such meaning, having due reference to the context and to the connection in which the words are used.

2. To convert an article, which is part of the freehold, into a chattel state by severing it from the realty, the act of severance must be done by one having the authority or right to do so; and it must be severed with the intention of converting it into a chattel state.

1880
Special Term.

Lewis
receiver, &c.,
v.
Rosler, sheriff,
*et al.*

Appeal from and *supersedeas* to a decree of the circuit court of the county of Kanawha, rendered on the 13th day of June, 1878, in a cause in said court then pending, wherein Charles C. Lewis, Receiver, was plaintiff, and J. H. Rosler, Sheriff, and another were defendants, allowed upon the appeal of Jesse H. Grogan.

Hon. J. Smith, judge of the seventh judicial circuit, rendered the decree appealed from.

Moore, Judge, furnishes the following statement of the case :

On the 5th day of April, 1878, C. C. Lewis, as receiver of the Splint Coal Company, filed in the clerk's office of the circuit court of Kanawha county, against J. H. Rosler, sheriff, and Jesse H. Grogan, the following bill or petition :

1880
Special Term.

Lewis,
receiver, &c.,
v.
Rosler, sheriff,
*et al.*

"To the Hon. Joseph Smith, Judge of Kanawha, Circuit Court:

"Your orator, Charles C. Lewis, would respectfully represent that at the fall term, 1877, of your court, he was appointed by an order of your court receiver of the property of the Splint Coal Company, in Kanawha county, in the chancery cause of *Stribling, trustee, &c.,* v. *Splint Coal Company, et al.,* pending in your court, and under such order he took possession of said property, and that on the — day of March, 1878, John H. Rosler, sheriff of Kanawha county, levied a writ of *fieri facias* in favor of *Jesse H. Grogan* v. *said Splint Coal Company* upon a lot of copper and brass, part of the property of said Splint Company, upon its premises, and which is part of the property which was placed in your orator's hands as receiver as aforesaid, and that said John H. Rosler, sheriff as aforesaid, now has said copper and brass in his possession, and has advertised the same for sale by him under said levy, on Saturday, the 6th day of April, 1878. Your orator has notified said Rosler not to sell the said property that is under charge of your orator as receiver as aforesaid, and not liable to levy or sale, but said Rosler, sheriff, told your orator that Grogan had given an indemnifying bond, and that he (Rosler) did not know but that it was his duty to go on with the sale, but that he himself would be glad if your orator would refer the matter to your honor. Your orator, therefore, prays that your honor will make an order restraining and inhibiting said Rosler, or any one else, from selling or otherwise disposing of or interfering with the said copper and brass levied on as aforesaid, or any other of the property of said Splint Coal Company which has been placed by the order of your court in your orator's hands as receiver.

"Charles C. Lewis,

"*Receiver of Splint Coal Company.*"

To which was appended the usual affidavit; and also had endorsed upon it the following order of injunction:

1880
Special Term.

Lewis,
receiver, &c.,
v.
Rosler, sheriff,
et al.

"The within named Jesse H. Grogan and John H. Rosler, sheriff of Kanawha county, his agents and deputies, are inhabited, restrained and enjoined from selling or disposing of the copper and brass mentioned and set out in the within petition of C. C. Lewis, receiver of the circuit court of Kanawha county, till the further order of the court, and the said Lewis being an officer of the court, and praying for the injunction in that capacity, no bond is required.

"J. SMITH,"
"*Judge of the Circuit Court Kanawha County.*

"*To W. E. G. Gillison, Clerk of the Circuit Court of Kanawha County.*
"*April 3, 1878.*"

On May 25, 1878, Grogan filed a demurrer to the bill, or petition of the receiver, "*for want of justice and for want of jurisdiction.*" The court overruled the demurrer, and on the 27th day of May, 1878, Grogan, by leave of the court, filed his separate answer to the bill, to which plaintiff replied generally. The answer is as follows:

"IN THE CIRCUIT COURT OF KANAWHA COUNTY.
"To THE HONORABLE JOSEPH SMITH,
"*Judge of the Circuit Court of Kanawha County:*

"The separate answer of Jesse H. Grogan to a bill of injunction awarded against him and John H. Rosler, sheriff of Kanawha county, for answer, saith that it may be true, that Charles C. Lewis was appointed by an order of your honor's court receiver of the real estate of the Splint Coal Company, and he may have taken possession of said real estate. It is true that John H. Rosler, sheriff, &c., did levy an execution in favor of your respondent against the said company upon a lot of copper and brass found on the premises of said company, and your respondent here files a copy of said execution, with the return thereon duly certified, and prays the same may be taken and considered a part of this answer,

1880
Special Term.

Lewis,
receiver, &c.,
v.
Rosler, sheriff,
et al.

but your respondent denies that said copper and brass was a part or any part of the real estate of said company; or that it was embraced or included in the order appointing said Lewis receiver, or that Lewis as receiver either has or is entitled to the possession of the same under any order of your honor's court or under the said order. And your respondent avers that the same is the *personal* estate of said Splint Coal Company, and was when levied on, and is now lying in an out-house piled up and wholly disconnected from the real estate of said company. Said Rosler may now have or may have had said copper and brass in his possession under and by virtue of said levy, and may have advertised same for sale, but your respondent denies that said Lewis, receiver, has any right to said copper and brass, or has any rightful charge, possession or control of same under said order, named or claimed in his answer to have been made by your honor's court as receiver, &c. In confirmation of which denial, your respondent herewith files a certified copy of an order of your honor's court appointing said Lewis receiver, which respondent supposes to be the order referred to in complainant's bill, and prays the same may be taken and considered as a part of this bill. And your orator alleges that said copper and brass was severed from said real estate and put in an out-house before the order of court was made appointing said Lewis receiver, and has remained so severed and disconnected from the real estate of said Splint Coal Company ever since, and is now and was so severed and disconnected when levied on. It is true your respondent has executed to said Rosler, sheriff as aforesaid, an indemnifying bond as alleged in the bill. All other allegations in the bill not herein admitted to be true are denied.

"And having answered all allegations deemed material he prays to be hence dismissed with his costs.

"J. H. GROGAN."

The second exhibit filed with the answer is as follows:

"At a circuit court held for Kanawha county, at the

court house thereof, on the 13th day of December, 1877 :

T. STRIBLING, TRUSTEE, *et al.* v. SPLINT COAL COMPANY, *et al.*—*In Chancery.*

"This day the defendant, Splint Coal Company, tendered its answer, with two exhibits, marked respectively one and two and three, to the rule awarded against it at a former day of this term to show cause why a receiver should not be appointed for said defendant, Splint Coal Company, which answer and exhibits are ordered to be filed, and the plaintiffs in said rule reply generally to said answer. And thereupon this cause came on again to be heard upon the papers heretofore read and the proceedings heretofore had therein, and was argued by counsel. Whereupon, and upon mature consideration of all which, the court being of opinion that the property of the defendant corporation, Splint Coal Company, is in danger of loss and misappropriation, it is adjudged, ordered and decreed that C. C. Lewis be, and he is hereby appointed a special receiver of all the real estate, together with all the privileges and franchises appertaining thereto, belonging to said Splint Coal Company, situate in the county of Kanawha, and State of West Virginia, and that said special receiver do forthwith proceed to take charge of said real estate, together with all the privileges and appurtenances thereto belonging and rent or lease the same, either as a whole or in separate parcels, and either by private or public letting, as in his judgment and discretion will realize the greatest amount of money, for a period of not exceeding two years from and after the 1st day of January, 1878, requiring of the party or parties to whom he may rent or lease said real estate and appurtenances, bond, with good secuity, for the payment of a cash rent for the same upon such time as said special receiver may deem most advantageous, provided that the whole of said rent be made payable before the expiration of such lease or leases.

"And it further appearing to the court, that the whole

of the real estate of said Splint Coal Company, situate in said Kanawha county, was returned by the sheriff of said county delinquent for the non-payment of the taxes charged and chargeable thereon for the years, 1875 and 1876, and was by said sheriff sold on the 16th of October, 1877, for the aggregate amount, including taxes, damages, interest, commissions, &c., of $2.448.62, at which sale J. D. McCulloch, J. J. Bright and J. H. Couch became the purchasers of said real estate for the aggregate sum aforesaid, it is therefore, further adjudged, ordered and decreed, that the said special receiver do, out of the first money that comes into his hands from the rents of said property, pay to said McCulloch, Bright and Couch, or their attorney, the sum aforesaid, with interest thereon as allowed by law from the said 16th day of October, 1877, to the time of such payment, but if in the judgment of the said special receiver it be impracticable to realize said sum of money and interest from the rents of said real estate within one year from the said 16th of October, 1877, then, and in that event, the said special receiver is hereby authorized and empowered on the faith and credit of said rents to borrow such an amount of money as may be necessary to pay to said McCulloch, Bright and Couch, or their assignee, the sum aforesaid, including interest. And if in the event it is found by the receiver to be impracticable to borrow the sum necessary to redeem said land on the faith and credit of the rents as herein provided, then the receiver is authorized to borrow said sum on the faith and credit of the first money that shall arise from the sale of any and all of the company's lands when sale is made, said money to come out of the first proceeds of sale if it be necessary to charge the proceeds of sale.

"And it is further ordered, that after the payment of the debt aforesaid, and the payment of any loan that may become necessary to pay said debts, that said special receiver hold, subject to the further order of this court, any money that may come into his hands by reason of

the leasing or renting as hereinbefore required. But before proceeding to discharge any of the duties as special receiver as aforesaid, the said C. C. Lewis shall enter into and acknowledge a bond, with good security, before the clerk of this court in the penalty of ten thousand dollars, conditioned for the faithful performance of his trust."

Grogan also filed as a part of his answer, the *fi. fa.* dated February 28, 1878, together with the sheriff's return endorsed thereon in the following language:

"I levied this execution March 1, 1878, eleven o'clock A. M., on one lot of copper pipes, about four thousand pounds, one barrel of brass, about four hundred pounds. The sale was forbidden and an indemnifying bond demanded, which was given and herewith returned. I was then enjoined not to sell by an order of the circuit court of Kanawha county.

J. H. ROSLER, *S. K. C.*"

On the 13th day of June, 1878, the court entered upon its record the following decree:

"This cause came on this day to be heard on the bill and the exhibits, the answer of Jesse H. Grogan and exhibits, the replication to the answer, and the depositions of witnesses, and the motion of defendant Grogan to dissolve the injunction heretofore awarded, which is overruled, and was argued by counsel. Upon consideration of which the court is of opinion and doth decide that the copper and brass in the bill mentioned are part of the property placed in the hands of the plaintiff as special receiver of this court in the cause of *Stribling, trustee,* v. *Splint Coal Company et al.*

"Therefore it is adjudged, ordered and decreed that the injunction heretofore awarded in this cause be and the same is hereby made perpetual; and that the complainant do recover against the defendant Jesse H. Grogan his costs by him expended in the prosecution of this suit, including an attorney's fee of fifteen dollars.

"And all the purpose for which this suit was instituted

1880
Special Term.

Lewis,
receiver, &c.,
v
Rosler, sheriff,
et al.

1880
Special Term.

Lewis,
receiver, &c.,
v.
Rosler, sheriff,
et al.

being accomplished, it is ordered that this cause be retired from the docket."

Grogan appealed to this Court, assigning for grounds, first, that "the bill should have been dismissed for want of proper parties, for no one is made a party either in the caption or prayer of the bill;" second, "the demurrer, if such a bill constitutes a suit, should have been sustained for want of exhibits;" third, that "as the copper and brass had been severed, and converted into personalty, and ceased to be a fixture, before Lewis was appointed a receiver, it was, therefore, liable to be taken in execution."

*John S. Swann,* for appellant, cited the following authorities:

20 Wend. 636; Ferard Fixtures §§ 31, 34, 35; 8 Bac. Abr. 158; 1 Black. Comm. 18; 4 Bac. Abr. 533, 534; 1 Black. Comm. 13-31; Ferard Fixtures 289, 327, 328; 6 W. Va. 185.

*D. L. Ruffner,* for appellee, cited the following authorities:

Code, ch. 125 § 28; *Id.* § 16; 1 Bouvier Law Dict. "Appurtenances"; Ewell Fixtures 7 n. 1; 8 Iowa 544; Ewell Fixtures 43, 44 and cases cited; 8 W. Va. 373, syll. 4.

MOORE, JUDGE, delivered the opinion of the Court:

This proceeding on the part of Lewis, as receiver, against Rosler as sheriff, and Grogan, in whose favor the *fi. fa.* had issued, is clearly a proceeding auxiliary to the chancery cause of *Stribling, trustee, &c.,* v. *Splint Coal Company et al,* pending in the circuit court. If Lewis, as receiver, had reason to believe that the property, levied on and about to be sold under the *fi. fa.* in favor of Grogan, was part of the property which the court had placed in his keeping and control, it was his duty to bring the matter to the attention of the court, and seek

1880
Special Term.

Lewis,
receiver, &c.,
v.
Rosler, sheriff,
et al.

its aid in protecting the property; and it was the duty of the court not only to protect the receiver, as its officer acting under its order, but also to protect the property, and enforce its order. Whilst it is perhaps true, that the receiver might have proceeded in some other mode to have brought the sheriff and the execution-creditor before the court, and had them punished for contempt, or might have availed himself of some legal remedy against them, yet he was not bound to stand by and see the property wrested out of his hands merely because he could have legal redress. Being property, as he believed, held by him under the order of the court, and subject to the direction of the court in the chancery suit of *Stribling, trustee, &c.,* v. *Splint Coal Company, &c.*, it was his right to protect it from all attempts to take it out of his possession, by injunction, until the question of its liability to be taken under execution was determined by the court; and this could be done by auxiliary bill, or by petition and motion in the Stribling case.

The auxiliary bill, or petition, in this case, sufficiently states the aggressing parties to enable the court to know against whom to specifically award the writ of injunction; and as Grogan appeared and demurred to and answered the bill, it is plain he was fully notified of the proceeding, and who were the parties intended as defendants by the bill, and had been made parties specially by the order awarding the injunction. The case being auxiliary to the Stribling trustee case, which was still pending, it was not absolutely necessary to have made exhibit in the bill of the order appointing Lewis receiver, because the whole proceeding, in that case, was open to the court's inspection in proceeding against the sheriff and Grogan, for the purpose of seeing whether or not they were violating the order of the court as alleged in the bill. The court did not err in overruling the demurrer.

Was the property levied on by the sheriff liable to be taken under execution? There is no question that the brass and copper levied on had been, before severance,

1880
Special Term.

Lewis,
receiver, &c.,
v.
Rosler, sheriff,
et al.

part of the realty of the Splint Coal Company. The testimony shows, that the lessee, Job E. Thayer, severed the brass and copper from the realty about August, 1877 ; and the order appointing Lewis receiver, shows his appointment was made December 13, 1877. It is, therefore, argued by the learned counsel for appellant, that Lewis had been appointed receiver of the *real estate* of the Splint Coal Company, and to take charge of same, with its privileges and appurtenances, and to rent the same out, &c., and that, therefore, as the brass and copper had been severed and converted into personalty before the receiver was appointed, it was liable to the *fi. fa.* levy, and the receiver was not at any time entitled to possession of them.

The order appointing Lewis receiver states : "the court being of opinion that *the property* of the defendant corporation, the Splint Coal Company, is in danger of *loss* and *misappropriation*, it is adjudged, ordered and decreed that C. C. Lewis be, and he is hereby appointed a special receiver of all the real estate, together with all the privileges and franchises appertaining thereto belonging to said *Splint Coal Company,* situated in the county of Kanawha, and State of West Virginia, and that said special receiver do forthwith proceed to take charge of said real estate, *together with all the privileges and appurtenances* thereto belonging, and rent or lease the same, either as a whole or in separate parcels, and either by private or public letting," &c.

In *Pickerell* v. *Carson,* 8 Ia. 544 ; it was held that the words *"fixtures* and *appurtenances,"* have acquired a peculiar and appropriate meaning, and were to be construed according to such meaning, having due reference to the context, and to the connection in which the words are used. The clause in the writing to be construed was : "Did sell and convey to said William C. Carson, the following described premises, to wit : All the fixtures and appurtenances contained in the daguerrean rooms," in the building, &c. Stockton, J., delivered the opinion, and said : "The controversy between them

Syllabus 1.

1880
Special Term.

Lewis,
receiver, &c.,
v.
Rosler, sheriff,
et al.

was whether the word appurtenances embraced the loose, moveable articles of personal property in the daguerrean rooms of the plaintiffs. So far as such articles of personal property were considered as appurtenances to the daguerrean rooms, and to the business carried on therein by the plaintiffs we think they were to be considered as embraced by the word 'appurtenances.' "

In the case before us, the broad language of the order appointing the receiver, viz : "The property of the defendant corporation, the Splint Coal Company, is in danger of loss and misappropriation, " would seem, as argued by the learned counsel for the receiver, to "have reference to such kinds of property as could be removed, stolen, destroyed or sold, and thereby be in danger of of loss and misappropriation," and it appears from the testimony that the brass and copper were severed from the realty by Thayer to prevent such loss or misappropriation. But the court has interpreted its own meaning by declaring in its order perpetuating the injunction, "that, the copper and brass, are part of the property placed in the hands of the plaintiff as special receiver of this Court in the cause of *Stribling, trustee*, v. *Splint Coal Company, et al.*"

Although the authorities are in considerable confusion as to when the severance converts the article into a chattel state, yet the principle seems to be settled, that the act of severance must be done, first, by one having authority or the right to so, and second, that it must be severed with the intention of converting the article into a chattel state. This principle is fully borne out by the authorities cited by the counsel, and is distinctly laid down by Ewell on Fixtures, pp. 43, 44, and sustained by the authorities cited in his notes. Now it appears from the deposition of *Thayer*, who was lessee of the property and made the severance, what was the intention of the severance. He testifies, as follows :

"On the 11th day of February, 1876, I leased from the Splint Coal Company all that property on the south side of the river, including two salt furnaces, for a term

Syllabus 2.

of years, which by our agreement I was required to return to the said company in like condition in which I received it, natural wear and tear excepted. At the time I leased the property, I expected to make salt on both furnaces as well as to run the farm. Salt making became so unprofitable that I first abandoned making salt on what is known as the Lorena Salt Furnace, and continued to run the Kenton Furnace at intervals merely to keep it from going into dilapidation. It was expensive to take care of the property on the Lorena Furnace, and the copper and brass were being stolen, and the only safe way I could keep it was to put it under lock and key, which I did about August, 1877, for the purpose of safe-keeping, or using in manufacturing salt, it being a part of the freehold which I was required to return at the end of the lease. The copper and brass spoken of is just as it was when in use, except it is in the warehouse for safe-keeping until required for use. I mean it is not cut up or disfigured."

Nothing is shown by the record as to Thayer's authority or right to sever the property, that is, whether it was done with the owner's consent or not. If done with the owner's consent it is clear from the testimony that the severance was only temporary and for the purpose of safe-keeping, and was not a severance of that permanent nature as to give the chatel-character. On the other hand, if the severance was done by Thayer without the authority or right to do so, then under the well established principles, the severance could not change the character of the article. I am therefore of opinion, that the brass and copper in this case did not lose its character, as a part of the realty, by the severance; and the circuit court did not err by its order perpetuating the injunction. The decree of the circuit court must be affirmed, with costs and $30.00 damages.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.